## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| AMY EDWARDS, | : |
| Plaintiff, | : Civil Action File No. |
| v. | : |
| DISTINCT HOLDINGS, INC.; ONE DIVERSIFIED, LLC; and ERIC HUTTO, in his individual capacity as Chief Executive Officer, | : Jury Trial Demanded |
| Defendants. | : |

## **COMPLAINT**

**COMES NOW,** Plaintiff, Amy Edwards ("Plaintiff"), by and through counsel undersigned, and hereby submits her Complaint against Defendants, Distinct Holdings, Inc. ("Distinct"), One Diversified, LLC ("Diversified"), and Eric Hutto ("Hutto"), (Distinct, Diversified and Hutto, collectively referred to herein as "Defendants"). Plaintiff shows the Court, as follows:

## **Authority**

This civil action is brought to under the provisions of the Equal Pay Act of 1963, seeking a remedy for sex and race discrimination and retaliation.

- 1 -

## Parties, Jurisdiction and Venue

**1.**

Plaintiff is a resident of the State of Georgia and the Northern District.

**2.**

Distinct is a domestic profit corporation, with its principal office located at 37 Market Street, Kenilworth, New Jersey 07033. Distinct may be served, via its registered agent, Business Filings Incorporated of DE, located at 820 Bear Tavern Road, West Trenton, New Jersey 08628.

**3.**

Diversified is a domestic limited liability company, and a subsidiary of Distinct, with its principal office located at 2975 Northwoods Parkway, Norcross, Georgia 30071. Diversified may be served, via its registered agent, Business Filings Incorporated, located at 289 South Culver Street, Lawrenceville, Georgia 30046.

**4.**

Hutto is the Chief Executive Officer of Diversified, and may be served at the principal office of Diversified, located at 2975 Northwoods Parkway, Norcross, Georgia 30071.

**5.**

The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331.

**6.**

Pursuant to 28 U.S.C. § 1391(b)(2), venue is appropriate in this judicial district as all incidents which form the basis of this lawsuit occurred in Defendants' Norcross, Georgia office.  Thus, Defendants are subject to the U.S.D.C. for the Northern District of Georgia.

**Factual Allegations**

**7.**

On October 3, 2022, Plaintiff was hired by Defendants as their Chief People Officer ("CPO").

**8.**

At that time, Diversified was in a state of flux.  There were multiple layoffs, and/or team or department staffing changes taking place, and, at times, the company was struggling to meet payroll.

**9.**

It was in this atmosphere that Plaintiff was charged with, among other things, "cleaning up" the Human Resources Department ("HR").

**10.**

In carrying out her duties, Plaintiff made personnel changes within HR, and also in other areas of the company, which were not always welcomed by the affected employees - - reactions not at all unusual in such circumstances.

**11.**

One employee (Employee 1), Plaintiff's direct report, referred to by Defendants as a BIPOC (black, indigenous person of color), complained, without cause, that Plaintiff discriminated against her because of her race.

**12.**

Employee 1 was unhappy because Plaintiff had moved her to a different department, even though she was receiving the same pay, same hours, and was designated at the same level within the company. Only her title had been changed.

**13.**

However, instead of providing Plaintiff with the firm support from upper management, especially Hutto, which is absolutely necessary when performing the oftentimes difficult and unpleasant duties of a CPO, Hutto gave credence to the disgruntled employee by entertaining her unfounded complaint and hired outside counsel to carry out an investigation into Plaintiff's actions.

**14.**

The findings of the investigation: Plaintiff was "rude" and "could have conducted herself better" but, Plaintiff's actions were not found to be discriminatory in any way.

**15.**

After, Plaintiff was absolved of discrimination in regard to Employee 1, three female employees, who, incidentally, were each BIPOC, claimed Plaintiff's "mistreatment" of them was based on race, and one other BIPOC "strongly implied it," per Defendants.

**16.**

Near that same time, Plaintiff became aware of Hutto's intention to allot equity to a relatively new, female employee. In her role as CPO, Plaintiff was obligated to, and did, point out to Hutto that the proposed equity allotment would be problematic as it would be unfair to other long term, higher ranked employees, who were not allotted equity.

**17.**

Hutto clearly did not appreciate Plaintiff's assessment regarding his intention and merely responded to Plaintiff that "I've heard your opinion." Thereafter, Hutto avoided Plaintiff whenever it was possible for him to do so.

**18.**

Defendants have alleged that Plaintiff's hiring practices were suspect, as the same disgruntled employee, Employee 1, made a second complaint against Plaintiff, objecting to Plaintiff hiring some of Plaintiff's former colleagues, especially since the new hires were "all white women." In actuality, Plaintiff also hired a white male.

**19.**

The fact is, it is quite common for newly employed managers, who possess hiring powers, to re-staff their departments with trusted former colleagues, whom they believe will support and ensure the success of the department they are in charge of managing. During pre-hiring discussions, Plaintiff was specifically advised by Hutto that she could do exactly that, and that, he and other managers, had done the same.

**20.**

In fact, in Plaintiff's role as CPO, she was instructed and required to support, and to actually facilitate, the smooth transition of outside hirees/trusted former colleagues hired by other managers, including Hutto, into the company, which often required Plaintiff to assuage disgruntled preexisting employees.

**21.**

Finally, Employee 1 further complained that there were pay discrepancies between herself and the newly hired white women.

**22.**

However, Plaintiff's new hires were not necessarily hired to perform the same duties with the same responsibilities as Employee 1, and new hires with more education, experience and/or job-related skills were appropriately and justifiably compensated.

**23.**

Nevertheless, Plaintiff was not given the benefit of a doubt, due to fear of possible discrimination claims. Instead, Defendants told the white Plaintiff that she needed to undergo "sensitivity training."

**24.**

When Plaintiff was reluctant to subject herself to this inappropriate training, which would surely be viewed by others, particularly potential employers, to be a negative factor, Plaintiff was then labeled "insubordinate" by Hutto and the powers that be within Diversified.

**25.**

Additionally, Plaintiff was accused of, in essence, "dragging her feet" in dealing with a male employee, who insulted a female attorney, employed by Diversified.

**26.**

In fact, due to the particularly abhorrent terminology used by the offending male employee on or about November 30, 2022, Plaintiff investigated the matter, and moved as quickly as possible to interview witnesses. Plaintiff completed and issued her investigative report on December 31, 2022. Plaintiff was subsequently advised that due to the offending employee's 30 year tenure with the company, he was allowed to retire on January 13, 2023, as opposed to being terminated.

**27.**

On May 26, 2023, Plaintiff was terminated, without cause.

**28.**

Defendants include a severance policy within their Employment Agreement, which, for individuals at Plaintiff's level, is a dollar amount equal to the Employee's Base Compensation for a period of six (6) months - - at least 24 such male and/or minority individuals were hired under these terms during Plaintiff's tenure.

However, Plaintiff, a white female, was only allotted a 3 month severance allowance in her Employment Agreement.

**29.**

Plaintiff pointed out this blatant and unfair inconsistency to Hutto, who agreed, on more than one occasion, that it was wrong and would be rectified - - it never was.

**30.**

When Plaintiff was terminated, she was not offered a severance allowance of any amount. Nor was she provided medical insurance coverage/COBRA for her and her family, which was also included in the terms of her Employment Agreement.

**31.**

At the time of the discriminatory acts alleged, Defendants knew or should have known that the means utilized to discriminate against Plaintiff were discriminatory and forbidden by law.

**32.**

Defendants performed the above described discriminatory and retaliatory actions willfully, wantonly, intentionally, and in reckless and callous disregard of Plaintiff's federally protected rights.

## COUNT I
### (Sex and Race Discrimination - Equal Pay Act of 1963)

**33.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs 7 through 32.

**34.**

As outlined above, Plaintiff was offered less in severance allowance than her male and minority colleagues.

**35.**

Defendants discriminated and then retaliated against Plaintiff by creating disparity in the severance policy in Plaintiff's Employment Agreement as compared to male and minority individuals in her peer group, and by then terminating Plaintiff following her complaints of unequal treatment.

**36.**

As a direct result of Defendants' discrimination and retaliation against Plaintiff, based on her sex and race, Plaintiff lost earnings, lost benefits, including her severance allowance of three month's pay, the additional three month's base compensation given her fellow male and minority colleagues, six month's base compensation as liquidated damages, the dollar value of six month's medical

insurance coverage/COBRA for her and her family, as well as the litigation costs and attorney's fees Plaintiff has incurred and continues to incur.

## COUNT II
### (Breach of Employment Agreement - Severance Policy)

**37.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs 7 through 32.

**38.**

Plaintiff and Defendants entered into an Employment Agreement, which included an allowance for Severance Payment.

**39.**

Despite this, when Defendants terminated Plaintiff without cause, they also failed to comply with the terms of the Employment Agreement, and instead, summarily dismissed Plaintiff with no offer of Severance Pay or insurance coverage whatsoever.

**40.**

As a direct result of Defendants' breach of the Employment Agreement, Plaintiff lost her severance allowance of three month's pay, the additional three month's base compensation given her fellow male and minority colleagues, six month's base compensation as liquidated damages, the dollar value of six month's

medical insurance coverage/COBRA for her and her family, as well as the litigation costs and attorney's fees Plaintiff has incurred and continues to incur.

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants, as follows:

(a) That Defendants be ordered to formulate, distribute and implement written policies which do not discriminate in any manner which are violations of the EPA;

(b) That Plaintiff recover appropriate and just severance allowance, equal to the severance allowance provided to the male and minority individuals in her peer group, i.e., 6 month's pay;

(c) That Plaintiff recover a dollar amount equal to the cost of 6 month's medical insurance coverage/COBRA for Plaintiff and her family;

(d) That Plaintiff recover liquidated damages for Defendants' willful violations of the EPA;

(e) That Plaintiff recover costs and expenses of litigation including an award of reasonable attorney's fees;

(f) That Plaintiff recover prejudgment interest; and

(g) For such other and further relief as the Court deems just and proper.

## Jury Demand

Plaintiff herein requests a trial by jury of all issues in this action.

Dated this 30th day of October 2024.

                              **PANKEY & HORLOCK, LLC**

                              By:  /s/ *Larry A. Pankey*
                                    Larry A. Pankey
                                    Georgia Bar No. 560725
                                  ***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone:   770-670-6250
Facsimile:    770-670-6249
LPankey@PankeyHorlock.com

## CERTIFICATION OF FONT SIZE

Pursuant to Local rule 5.1C of the Local Rules of the United States District Court for the Northern District of Georgia, I, Larry A. Pankey, of Pankey & Horlock, LLC, attorney for Plaintiff, Amy Edwards, hereby certify that the foregoing **Complaint** is typewritten in MS Word using Times New Roman font, fourteen (14) point type.

Dated this 30th day of October 2024.

**PANKEY & HORLOCK, LLC**

By: */s/ Larry A. Pankey*
Larry A. Pankey
Georgia Bar No. 560725
***Attorneys for Plaintiff***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **AMY EDWARDS,** : | |
| : | |
| Plaintiff, : | Civil Action File No. |
| : | |
| v. : | |
| : | |
| **DISTINCT HOLDINGS, INC.;** : | |
| **ONE DIVERSIFIED, LLC; and** : | |
| **ERIC HUTTO, in his individual** : | |
| **capacity as Chief Executive** : | |
| **Officer,** : | |
| : | |
| Defendants. : | |
| _____ : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing **Complaint** with the Clerk of Court using the CM/ECF system.

Dated this 30th day of October 2024.

                                              **PANKEY & HORLOCK, LLC**

                                              By:  /s/ *Larry A. Pankey*
                                                   Larry A. Pankey
                                                   Georgia Bar No. 560725
                                                 *Attorneys for Plaintiff*

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone:   770-670-6250
Facsimile:    770-670-6249
LPankey@PankeyHorlock.com